## 30816. ORVIS v. THE STATE.

HILL, Justice.

Ronald Orvis was tried and convicted of armed robbery in Clayton Superior Court. His appeal raises issues of speedy trial and double jeopardy.

The Clayton Superior Court has four terms a year, commencing on the first Mondays in February, May, August and November. Defendant was arrested in January 1975 and indicted in February for the armed robbery of a convenience store. In the February term of court, the defendant filed a demand for trial. He was brought to trial in July during the May term. A mistrial was declared July 25, 1975, after the jury was unable to reach a verdict. He was tried again the next week and a second mistrial was declared on July 30 for the same reason. Finally, on September 8, 1975, during the August term of court, he was found guilty in a third trial.

1. The defendant urges that he was denied a speedy trial in that he demanded trial during the February term, but that he was not tried during that term nor the next term (May) in violation of Code Ann. § 27-1901 and the Sixth Amendment. The defendant argues that the state did not seek the death penalty and that Code Ann. § 27-1901 is applicable to him as a " . . . person against whom a true bill of indictment is found for an offense not affecting his life" in which event he must be tried at the term when indicted and when the demand is made, or at the next term.

Code Ann. §§ 27-1901.1 and 27-1901.2 concern demands for speedy trial where the offense is a capital one. If the defendant is charged with a capital offense he must be brought to trial during the term of court in which the demand is made or within the next two regular terms. The defendant maintains that since the state was not seeking the death penalty for armed robbery, Code Ann. § 27-1901 was applicable because the offense was one "not affecting his life."

The penalty for armed robbery prescribed by the Criminal Code of 1968 is death, imprisonment for life, or imprisonment for not less than one nor more than twenty years. Code Ann. § 26-1902. However, the state did not

seek the death penalty here. As noted, Code Ann. § 27-1901 and its two-term limitation is applicable to an "offense not affecting . . . life" and Code Ann. §§ 27-1901.1 and 27-1901.2 and the three-term limitation are applicable to a "capital offense."

Because a mistrial based on the jury's inability to reach a verdict does not satisfy the speedy trial requirements of our Code (*Geiger v. State,* 25 Ga. 667 (1858), *Rider v. State,* 103 Ga. App. 184 (118 SE2d 749) (1961)), at least where the defendant could have been retried before the expiration of the term (*Little v. State,* 54 Ga. 24 (1875)), it becomes necessary to determine whether the offense of armed robbery for which the death penalty is not sought is a "capital offense" or an "offense not affecting . . . life" within the meaning of the cited Code sections.

In *Letbedder v. State,* 129 Ga. App. 196 (199 SE2d 270) (1973), the Court of Appeals had before it a similar inquiry. At that time the death penalty could not be imposed in Georgia by virtue of the decision in Furman v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346) (1972). The Court of Appeals held that armed robbery nevertheless was a capital offense and was controlled by Code Ann. §§ 27-1901.1 and 27-1901.2, rather than § 27-1901, even though the death penalty could not be imposed at that time.

Applying *Letbedder,* supra, we find that the trial court did not err in overruling the defendant's motion to dismiss the indictment made at the August term of court based upon alleged denial of speedy trial. We find no denial of the Sixth Amendment right to speedy trial. Barker v. Wingo, 407 U. S. 514 (92 SC 2182, 33 LE2d 101); *Hall v. Hopper,* 234 Ga. 625 (216 SE2d 839) (1975); *Treadwell v. State,* 233 Ga. 468 (211 SE2d 760) (1975).

2. The defendant argues that his plea of former jeopardy should have been sustained because he was tried three times for the same offense. The first two trials were declared mistrials because the juries in those trials were unable to agree. He contends that the trial court abused its discretion in declaring the mistrials and that even if there was no abuse, the state by having to resort to a third trial has failed to prove the defendant's guilt beyond a

reasonable doubt.

The first retrial after a mistrial caused by the inability of the jury to agree does not constitute double jeopardy where there is manifest necessity for declaring the mistrial. United States v. Perez, 22 U. S. (9 Wheat) 579 (1824); Logan v. United States, 144 U. S. 263 (12 SC 617, 36 LE 429) (1892); Dreyer v. Illinois, 187 U. S. 71 (23 SC 28, 47 LE 79) (1902); Keerl v. Montana, 213 U. S. 135 (29 SC 469, 53 LE 734) (1909); Gori v. United States, 367 U. S. 364 (91 SC 1523, 6 LE2d 901) (1961); *Jones v. State,* 232 Ga. 324 (206 SE2d 481) (1974); *Cameron v. Caldwell,* 232 Ga. 611 (208 SE2d 441) (1974); *Wood v. State,* 234 Ga. 758 (1) (218 SE2d 47) (1975); *Jessen v. State,* 234 Ga. 791 (1) (218 SE2d 52) (1975); Code Ann. § 26-507(e) (2) (c).

As was stated by the court in United States v. Castellanos, 349 FSupp. 720, 723 (E.D.N.Y. 1972), revd. 478 F2d 749 (2d Cir. 1973): "The possibility of a retrial after the discharge of the jury for failure to agree serves to discourage the putting of excessive pressure on juries to agree, and reduces the risk that a verdict will not be a genuine jury decision freely arrived at." We would add that the possibility of a retrial after the discharge of the jury for failure to agree also serves to prevent a single juror from unreasonably holding out for acquittal, causing a mistrial, and thereby invoking the bar of double jeopardy single-handedly.

In the case before us, at the first trial the court charged the jury on the morning of the second day of trial. The trial judge checked with them before sending them to lunch to see if they were about to reach a verdict. Upon learning that they were not near agreement, the court sent them to lunch. Sometime later the judge called them in to inquire whether they were making progress. The foreman replied, slow progress. The jury continued to deliberate until late in the afternoon when they returned to hear the testimony of one of the witnesses. They returned to the jury room. Later they announced to the court that they were hopelessly deadlocked. The court asked if any member felt they could reach a verdict. After getting no response, he declared a mistrial.

The second trial was held July 28th, 29th and 30th. The jury began deliberations immediately after lunch on

July 29th. They did not reach a verdict that afternoon. After deliberating from 9 a.m. until noon the next day, the court examined the panel and determined that they were hopelessly deadlocked.

We find manifest necessity in each instance for declaring a mistrial.

However, the question presented here is whether a third trial, after two mistrials caused by jury disagreement, constitutes double jeopardy. See United States v. Berniker, 439 F2d 686 (9th CCA 1971).

In Preston v. Blackledge, 332 FSupp. 681 (E. D. N. C. 1971), the court held that a fifth trial, when juries in the four previous trials were unable to reach verdicts, constituted double jeopardy. In doing so, the court distinguished United States v. Persico, 425 F2d 1375 (2d Cir. 1970).

In Persico, supra, the co-defendant Hugh McIntosh was tried five times. The first trial ended in jury disagreement; the second trial resulted in convictions which were reversed on appeal; the third trial aborted as to Persico when he was shot during the trial but continued as to McIntosh and the jury disagreed; the fourth trial resulted in convictions which were reversed on appeal; the fifth trial resulted in convictions which were affirmed on appeal. As can be seen, McIntosh was convicted following two trials which ended in jury disagreement. The claim that the indictment should have been dismissed because of repeated retrials was rejected. See 425 F2d p. 1385.

In United States v. Castellanos, supra, the district court held that where two previous trials resulted in deadlocked juries, a third trial was barred on the basis of double jeopardy. The Court of Appeals for the Second Circuit reversed (478 F2d 749), pointing to defendant McIntosh in the Persico case, supra, and questioning Preston v. Blackledge, supra.

In Hyde v. State, 196 Ga. 475 (26 SE2d 744) (1943), this court reached the same result. There the jury found the defendant guilty after two prior trials had ended in mistrials because of hung juries. This court held that the trial judge did not abuse his discretion in declaring the mistrials and that the plea of former jeopardy was properly overruled.

The court below did not err in overruling the plea of former jeopardy.

3. The defendant moved for a directed verdict on the ground that the prosecutor had failed to prove with specificity the allegations of the indictment as to the amount of money taken.

The indictment charged the defendant with taking $84 in United States currency. The victim testified that "between $80 and $100" was taken. As to fatal variance generally, see *Dobbs v. State,* 235 Ga. 800 (3) (221 SE2d 576) (1976). As to variance between the amount of money alleged in the indictment and the amount shown by the evidence, see *Bell v. State,* 227 Ga. 800 (1) (183 SE2d 357) (1971); *Colton v. State,* 231 Ga. 502 (202 SE2d 444) (1973). We find no error here.

*Judgment affirmed. All the Justices concur, except Ingram, J., who concurs in the judgment only and Gunter, J., who dissents.*

SUBMITTED FEBRUARY 16, 1976 — DECIDED JUNE 8, 1976.

*Glaze, Glaze & McNally, Kirby A. Glaze,* for appellant.

*William H. Ison, District Attorney, J. W. Bradley, Assistant District Attorney, Arthur K. Bolton, Attorney General, Kirby G. Atkinson, Staff Assistant Attorney General,* for appellee.

GUNTER, Justice, dissenting.

Appellant was convicted at his third trial for having committed the crime of armed robbery. His first two trials resulted in mistrials, declared over his objection, for the failure of the two juries that tried the two cases to reach a verdict of guilty or not guilty. The record shows that the first jury stood 11 to 1 for conviction, and the second jury stood 7 to 5 for acquittal. The third jury convicted, and the trial judge imposed a sentence of eight years. This appeal is from the conviction and sentence.

The appellant has raised two constitutional issues that, in my view, are meritorious and require reversal. The first issue relates to the time of the conduct of his third

trial, maintains that it could not be conducted at the third term of court following the filing of a demand for trial, and this, to me, raises a due process issue. The second issue raises a double jeopardy violation in that his third trial for the same offense followed two mistrials declared by the trial judge in each case over his objection.

### The Time of Trial Issue

If a proper demand for trial in a non-capital criminal case is filed at the first term of court, the accused must be tried at that term or the second term of court, and if he is not tried by the state at either of those two terms, "he shall be absolutely discharged and acquitted of the offense charged in the indictment." Code Ann. § 27-1901.

If a proper demand for trial is filed in a capital case, the state must try the defendant at the first, second, or third term of court, and if not so tried, "then he shall be absolutely discharged and acquitted of the offense charged in the indictment." Code Ann. §§ 27-1901.1, 27-1901.2.

In this case the appellant's first two trials took place during the latter days of the second term of court. His third trial took place during the third term of court, and it therefore becomes very material as to whether he was charged with a capital or non-capital crime.

The penalty for armed robbery in Georgia is death, imprisonment for life, or imprisonment for not less than one nor more than twenty years. Code Ann. § 26-1902.

Assuming that Georgia's death penalty statutes are constitutional, which I do not, the appellant contends that the state not only waived the death penalty in all three trials, but even went further and conceded in open court at all three trials that "this case does not fit in the death penalty category under the new death penalty statute." Having made this concession at the first trial, whether it be deemed waiver or statement of fact and law, the state could not, under double jeopardy principles, successfully call for and impose the death penalty in any subsequent trial of the accused after the first trial. Green v. United States, 355 U. S. 184 (1957); Price v. Georgia, 398 U. S. 323 (1969). Therefore, the state, after waiving the death penalty or conceding that it was not applicable in the first trial, knew that the death penalty could not be imposed in

a subsequent second, third, fourth, or fifth trial, and that the three-term statutory provision' with respect to demand for trial was not applicable. Once the state has waived the death penalty in a trial or conceded that the death penalty is not applicable in the case, the two-term statutory provision (Code Ann. § 27-1901) is applicable. I think the state is placed in the indefensible position of having contended in all three trials that the death penalty was not applicable, but, for purposes of conducting a third trial at the third term, it contends that the case tried at the third term was a capital case.

The appellant's motion to dismiss the indictment at the beginning of the third term should have been granted; and the denial of the motion, the motion being based upon a statute that accorded all accused persons a procedural right, was an arbitrary denial of procedural due process of law.

### The Double Jeopardy Issue

My position on double jeopardy following mistrials in hung-jury criminal cases, where the defendant does not consent to the mistrial, has been made quite clear. See my dissenting opinions in *Cameron v. Caldwell,* 232 Ga. 611 (208 SE2d 441) (1974), and *Wood v. State,* 234 Ga. 758 (218 SE2d 47) (1975).

I continue of the view that "to hold that a hung jury in a criminal trial is the equivalent of 'manifest necessity' for the declaration of a mistrial that would permit the retrial of an accused is to make the double jeopardy provision in the Fifth Amendment and the due process provision in the Fourteenth Amendment, in combination, meaningless." *Wood v. State,* supra, p. 765.

The appellant was tried for the same offense by two separate juries in July of 1975. Both juries were unable to reach a verdict, the first by a vote of 11 to 1 for conviction and the second by a vote of 7 to 5 for acquittal. The third trial for the same offense was conducted in September of 1975, and the third jury convicted.

Two witnesses testified for the state at the third trial, the victim of the robbery and a detective who testified as to his investigation and arrest of the appellant. The appellant testified in his own behalf, contended that he did not commit the robbery, that he was not at the scene of

the robbery when it was committed, and that he had an alibi witness who was unavailable and in Michigan at the time of his trial. The robbery occurred in December of 1974, the appellant was arrested in January of 1975, and though a bail bond in the amount of $5,000 was authorized by the trial judge in February of 1975, the appellant, an indigent, has been incarcerated since his arrest. Though he demanded trial at the first term after his arrest, he was not tried by the state. He remained incarcerated. He was then tried twice in July of 1975, and both juries refused to convict him. On the third try, the state achieved a conviction.

This case is, to me, a blatant violation of the constitutional principles of double jeopardy and due process of law.

I think the second and third trials of the appellant were unconstitutionally conducted, I think the appellant is now serving a sentence that was unconstitutionally imposed, and I would reverse the conviction achieved by the state at the third trial.

I respectfully dissent.